**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>GREGORIO LEON-ALVAREZ,<br>Defendant. | **No. 05-CR-4126-DEO**<br><br>**SUPPLEMENTAL MEMORANDUM OPINION AND ORDER REGARDING RESENTENCING AFTER REMAND** |

Before the Court is the matter of resentencing of the Defendant, Gregorio Leon-Alvarez (Leon). This memorandum opinion supplements findings made on the record at the sentencing hearings held on September 30 and November 7, 2008.

## I. FACTS

On August 10, 2006, Leon pled guilty to conspiracy to distribute 50 grams or more of a methamphetamine mixture[1] and misusing employment eligibility verification.[2] Using the 2005 edition of the Sentencing Guidelines, this Court sentenced Leon on April 12, 2007, to concurrent terms of 37 months on each count. Leon would have faced a mandatory minimum

[1] 21 U.S.C. §§ 841(a) & 846 (2006).

[2] 18 U.S.C. § 1546(b).

sentence of 60 months imprisonment because of two prior convictions but for this Court's conclusion that he qualified for safety-valve relief under 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2. Applying the rationale underlying § 4A1.2(c) — which allows the exclusion of a prior conviction that is "similar to" an offense listed under that section in determining a defendant's criminal history category[3] — this Court found Leon's conviction in 1993 for contributing to the delinquency of a minor should not be counted.[4] This placed Leon in

---

[3] Section 4A1.2(c)(1) mandates the inclusion of all misdemeanor and petty offenses in a defendant's criminal history score except certain enumerated offenses, "and offenses similar to them, by whatever name they are known," that did not result in a term of probation of more than one year or a term of imprisonment of at least 30 days. U.S.S.G. § 4A1.2(c).

[4] The Court explained its determination by stating:

> The Court is determining that I am not literally following the guidelines to say that [U.S.S.G. § 4A1.2(c)] does have a listing that's similar [to Leon's 1993 conviction]. I'm only saying that I have a right to consider these advisory. And I believe that the type of – the 15 or so that are named there are offenses that are akin to, if not similar to, [Leon's 1993 conviction].

Sentencing Transcript, April 1, 2007 at 14, ll.18-25. The Court further clarified that, given the advisory nature of the guidelines, it had discretion to conclude that, while Leon's (continued...)

criminal history category I, thus rendering him eligible for safety valve relief.

The Government appealed the sentence on the ground that this Court miscalculated Leon's criminal history points and, as a result, erroneously found him eligible for safety valve relief. The Eighth Circuit agreed, reversing and remanding this Court's sentencing decision on the ground that this Court erred in finding the advisory nature of the guidelines permitted it to exclude Leon's 1993 conviction for contributing to the delinquency of a minor because the offense was "akin to, if not similar to" the offenses listed under U.S.S.G. § 4A1.2(c)(1).[5] United States v. Gregorio Leon-

---

[4](...continued) 1993 conviction might not resemble any particular offense listed under § 4A1.2(c) so closely that it could fairly be deemed "similar" in the narrow sense suggested by that guideline, its exclusion from the criminal history calculation could be based on the same rationale for justifying exclusion of the listed offenses. In addition, the Court observed one of the overall purposes of the guidelines was uniformity in sentencing. Thus, since it would be highly unusual for a defendant to be exposed to an additional 23 month enhancement for an offense as petty as Leon's 1993 conviction, the Court concluded its reading of § 4A1.2(c) would better serve this hallmark goal of the guidelines.

[5] The Eighth Circuit originally ruled on this cause on June 10, 2008. This order was vacated and a new opinion was (continued...)

Alvarez, 532 F.3d 815, 819 (8th Cir. 2008) ("The district court erred in finding that the advisory nature of the Guidelines permitted it to treat Leon-Alvarez's 1993 offense as akin to a listed excludable offense . . . ."). As explained in further detail below, at the time of Leon's original sentencing, the test in the Eighth Circuit for determining whether a prior offense is "similar to" an offense listed in § 4A1.2(c)(1) was the strict "elements test" re-stated in United States v. Borer, 412 F.3d 987 (8th Cir.2005). This test was rejected, however, by the United States Sentencing Commission (the Commission), which clarified, through adoption of Amendment 709, the approach courts should use in determining the "similarity" of offenses for the purposes of § 4A1.2(c).[6]

On September 30, 2008, resentencing proceedings began before this Court. During the first of two hearings, Leon requested that the Court recalculate his criminal history score, this time by applying the new test formulated by the

[5](...continued) filed on June 27, 2008. This latest ruling is of course the one this Court will address.

[6] See infra pp. 5-9.

United States Sentencing Commission through the adoption of Amendment 709. The Court continued the hearing to allow further briefing on the question of whether Amendment 709 should be applied in this manner. At the second hearing on November 7, 2008, the Court concluded that it should. The remainder of this Order explains how the Court arrived at this conclusion.

## II. LAW

Not long after Leon's original sentencing in this Court, the United States Sentencing Commission adopted Amendment 709,[7] which expressly rejects the "elements" approach in favor of the "multi-factor" approach for determining whether a prior offense is "similar to" one of the enumerated offenses in § 4A1.2(c). Specifically, the amended application notes to § 4A1.2(c) now provide:

> (A) In General.—In determining whether an unlisted offense is similar to an offense listed in subdivision (c)(1) or (c)(2), the court should use

[7] Amendment 709 was proposed in May 2007, and was set to become effective on November 1, 2007, absent affirmative disapproval by Congress before that date. Congress did not act to prevent its adoption. Amendment 709 is discussed at length in Judge Bright's concurring opinion (Leon-Alvarez, 532 F.3d at 819-22 (Bright, J., concurring)), but is not mentioned in the majority opinion.

> a common sense approach that includes consideration of relevant factors such as (I) a comparison of punishments imposed for the listed and unlisted offenses; (ii) the perceived seriousness of the offense as indicated by the level of punishment; (iii) the elements of the offense; (iv) the level of culpability involved; and (v) the degree to which the commission of the offense indicates a likelihood of recurring criminal conduct.

U.S.S.G. § 4A1.2, comment., n.12(A) (2007) (adopted by Amendment 709, effective November 1, 2007). The Commission's stated purpose for this portion of Amendment 709 provides:

> The amendment resolves a circuit conflict over the manner in which a court should determine whether a non-listed offense is "similar to" an offense listed at § 4A1.2(c)(1) or (2). Some courts have adopted a "common sense approach," first articulated by the Fifth Circuit in United States v. Hardeman, 933 F.2d 278, 281 (5th Cir. 1991). This common sense approach includes consideration of all relevant factors of similarity such as "punishments imposed for the listed and unlisted offenses, the perceived seriousness of the offense as indicated by the level of punishment, the elements of the offense, the level of culpability involved, and the degree to which the commission of the offense indicates a likelihood of recurring criminal conduct." Id. See also United States v. Martinez-Santos, 184 F.3d 196, 205-06 (2d Cir. 1999) (adopting Hardeman approach); United States v. Booker, 71 F.3d 685, 689 (7th Cir. 1995) (same). Other courts have adopted a strict "elements" test, which involves solely a comparison between the elements of the two offenses to determine whether or not the offenses are similar. See United States v. Elmore, 108 F.3d 23, 27 (3d Cir. 1997); United States v. Tigney, 367 F.3d 200, 201-02 (4th Cir. 2004); United States v. Borer, 412 F.3d 987, 992 (8th Cir. 2005). This amendment, at

> Application Note 12(A), adopts the Hardeman "common sense approach" as a means of ensuring that courts are guided by a number of relevant factors that may help them determine whether a non-listed offense is similar to a listed one.

Supplement to App. C, Amendment 709 at 240.

As for the impact Amendment 709 has on this case, the Government argues the Eighth Circuit Court found this Court had improperly excluded Leon's 1993 conviction from the calculation of his criminal history points, thereby effectively ruling that Leon has a criminal history category of II and is thus not safety valve eligible. Therefore, the Government argues this Court's consideration of Amendment 709 is barred by the law of the case doctrine. Leon, on the other hand, contends the only issue conclusively determined by the Eighth Circuit on appeal was that this Court did not apply the proper test at sentencing for determining whether Leon's 1993 conviction was "similar to" the offenses listed under § 4A1.2(c)(1).

The Court is persuaded that the question of whether Leon's 1993 conviction is "similar to" one of the 15 offenses listed in § 4A1.2(c)(1) was not decided, either expressly or by necessary implication, in the previous appeal. Rather, the

question was left open, and the scope of the appellate court's mandate is simply that this Court must properly apply § 4A1.2(c)(1) in the recalculation of Leon's criminal history category. The Court therefore turns its attention to identifying the proper form of application of § 4A1.2(c)(1).

At the time of Leon's original sentencing, the proper form of application of § 4A1.2(c)(1) — that is, the proper manner for determining whether a prior offense is "similar to" an offense listed in that Guideline — turned on the district court's comparison of the "resemblance and character of the [elements of the] offenses." United States v. Borer, 412 F.3d 987, 992 (8th Cir. 2005). However, in adopting Amendment 709, the Commission "'clarified the approach courts should use in determining the 'similarity' of offenses for the purposes of § 4A1.2(c) thus trumping our decision in Borer.'" United States v. Pando, 545 F.3d 682, 683 (8th Cir. 2008) (quoting United States v. Leon-Alvarez, 532 F.3d 815, 820 (8th Cir. 2008) (Bright, J., concurring)).

This Court is persuaded that Amendment 709 clarifies the interpretation of § 4A1.2(c), rather than effecting a substantive change to that guideline, and accordingly should

be applied in re-calculating Leon’s criminal history at resentencing. See Leon-Alvarez, 532 F.3d at 820-21 (Bright, J., concurring) (citing United States v. Larson, 110 F.3d 620, 627-28 n.8 (8th Cir. 1997); United States v. Douglas, 64 F.3d 450, 453 (8th Cir. 1995); United States v. Renfrew, 957 F.2d 525, 527 (8th Cir. 1992)); see also United States v. Godin, 522 F.3d 133, 134-36 (1st Cir. 2008) (observing that, in the context of a circuit split concerning the interpretation of a guideline, an amendment by the Commission may clarify its preference for one interpretation over another, thereby allowing a court to revise its prior reading of that guideline at resentencing).

## III. CLARIFICATION OF FACTS

Before turning to the recalculation of Leon’s criminal history category, it is worth clarifying a matter identified by the Eighth Circuit’s opinion. On page 4, footnote 4, of that opinion the Circuit Court of Appeals states as follows:

> In determining the sentence, it appears that the district court erred in reading Leon-Alvarez's combined adjusted offense level under paragraph 46 of the PSR. In calculating his total offense level, the court read this paragraph as stating that Leon-Alvarez’s adjusted offense level was 24 when in fact it was 26.

This Court can and has made mistakes, but at sentencing no court can misread the presentence report in such a manner and so rule. Should such an error occur, either the government's attorney or the probation officer would quickly point out the misreading. Although the Circuit Court's opinion correctly observes that the figure read into the record for paragraph 46 differed from the one actually listed by the PSR, the Court is confident in the arithmetic stated on the record.

This is explained in the sentencing transcript on pages 26, 27, and 28, portions of which read:

> [Then,] paragraph 29 talks about the base offense level. And according to the guidelines, the appropriate guideline for a violation of [21 U.S.C. § 846] is [U.S.S.G. §] 2D1.1.
>
> Pursuant to subsection (a)(3) of that guideline, the base offense level is determined by the amount of controlled substance the defendant's accountable for under relevant conduct. As set out in the offense conduct and the parties' stipulation, it's recommended that the defendant be held accountable for 17.04 grams of methamphetamine actual.
>
> All is contemplated by guideline [2D1.1(c)(7)], which directs that if the offense involved . . . between [5] and 20 grams of methamphetamine actual, the base offense level is 26. This Court believes that . . . recommendation is appropriate. And we're going to start off with a base offense level of 26.
>
> Paragraph 30. Guideline [2D1.1(b)(6)] directs that if the defendant meets the criteria set forth in subdivisions one through five of guideline 5C1.2, which has to do with limitation on the applicability of statutory minimum sentences in certain cases,

> decrease by two levels.
>
> The Court has ruled that [the defendant] has only one criminal history point and, therefore, that he is entitled to a safety valve decrease. Therefore, in paragraph 30 we would have a minus two.
>
> . . . .
>
> Paragraph 34. Adjusted offense level for count one subtotal. We added 26 and we took off two and we now have, in paragraph 34, an adjusted offense level for count one of 24.
>
> . . . .
>
> That gives us paragraph 44, a greater adjusted offense level of 24. That gives us, at paragraph 46, a combined adjusted offense level of 24.
>
> Paragraph 47. Adjustment for acceptance of responsibility.
>
> As previously noted, the two-level reduction for acceptance is recommended. All is contemplated by guideline [3E1.1(a)]. We take off two.
>
> . . . .
>
> . . . . The Government has made a motion. That motion is sustained. We started off, then, in paragraph 46 with a combined adjusted offense level of 24. We took off two for acceptance of responsibility.
>
> We took off one more for timely acceptance. And so now we have 24 minus three, which gives us paragraph 49, an adjusted offense level of 21.

Sentencing Hr’g Tr. 26-28, Apr. 10, 2007.

## IV. ANALYSIS

In applying Amendment 709 to determine whether Leon’s 1993 conviction for contributing to the delinquency of a minor is similar to an offense listed in § 4A1.2(c)(1), this Court uses:

> a common sense approach that includes consideration of relevant factors such as (I) a comparison of punishments imposed for the listed and unlisted offenses; (ii) the perceived seriousness of the offense as indicated by the level of punishment; (iii) the elements of the offense; (iv) the level of culpability involved; and (v) the degree to which the commission of the offense indicates a likelihood of recurring criminal conduct.

U.S.S.G. § 4A1.2, comment., n.12(A). As one court applying this "common sense approach" has previously explained, if the factors, "taken as a whole, indicate that the offense is, like the listed offenses, neither particularly serious nor likely to indicate recurring criminal conduct, then the defendant's prior offense should be excluded." United States v. Hardeman, 933 F.3d 278, 282 (5th Cir. 1991). For purposes of comparison, this Court looks to federal and state law and considers such generic sources as the Model Penal Code and legal dictionaries to define and characterize the listed offenses. United States v. Borer, 412 F.3d 987, 992 (8th Cir. 2005) (citations omitted); United States v. Lopez-Pastrana, 244 F.3d 1025, 1028 n.4 (9th Cir. 2001).

Regarding the range of possible punishments, under Iowa law existing at the time of Leon's offense, contributing to the delinquency of a minor was a simple misdemeanor punishable

by imprisonment not to exceed 30 days, or a fine not to exceed $100.[8] Several of the listed offenses are simple misdemeanors subject to the same level of punishment as contributing to the delinquency of a minor.[9] Some listed offenses expose the offender to significantly harsher sentences. For example, non-support is a class D felony under Iowa law for which a non-habitual offender may be punished by no more than five years imprisonment plus a fine of not less than $750 but not

---

[8] See Iowa Code Ann. §§ 233.1, 233.2, & 903.1(1)(a) (West 1992) (current versions at Iowa Code §§ 709A.1, 709A.2, & 903.1(1)(a) (2007), respectively). Leon was actually charged with three offenses: (1) contributing to juvenile delinquency; (2) harboring a minor; and (3) selling/giving alcohol to a minor. At the time of the offense, selling/giving alcohol to a minor was a simple misdemeanor punishable by imprisonment for not more than 30 days or a fine of up to $100. Iowa Code Ann. §§ 123.49(2)(h), 123.50(1), & 903.1(1)(a) (West 1992). Currently, Iowa law limits punishment for this offense to a scheduled fine. Iowa Code §§ 123.49(2)(h), 123.50(1), & 805.8C(2) (2007). Leon was assessed a fine of $40 for this offense. Harboring a minor was (and still is today) a violation of a city ordinance. Sioux City, Iowa, Municipal Code § 8.48.020 (1992). The state court, in its order, treated all these offenses as a single contributing to the delinquency of a minor charge, as did this Court at Leon's original sentencing. As the Eighth Circuit's opinion observed, the parties did not dispute this determination on appeal. Leon-Alvarez, 532 F.3d at 816, n.3.

[9] For example, reckless driving and careless driving are both simple misdemeanors. Iowa Code §§ 321.277, 321.277A, & 321.482. Disorderly conduct and trespassing are also simple misdemeanors. Iowa Code §§ 716.8(1) & 723.4.

more than $7,500. Iowa Code § 726.5. Thus, this comparison of the statutory range of punishments suggests the unlisted offenses are at a level of seriousness similar to or lower than the listed offenses in § 4A1.2(c).

As for the perceived seriousness of the unlisted offense, Leon faced up to 30 days imprisonment, but was sentenced to only five hours jail.[10] This suggests a level of seriousness lower than the generic state crime of contributing to delinquency. As reflected in the arrest report recorded shortly after Leon's 1993 arrest (see Government's Ex. 2 at 2, Docket No. 45 at 2 (filed under seal)), Leon committed the offense by keeping a minor girl, who appeared intoxicated, out past curfew. Given the lenient sentence imposed and the petty nature of the offense, this factor weighs heavily in favor of finding the unlisted offense is similar to those listed in § 4A1.2(c)(1).

Turning to the elements of the offense, Section 233.1 of the Iowa Code — the state statute addressing the offense of

---

[10] This was time served. Leon was also assessed a fine of $40 on the charge of selling/giving alcohol to a minor.

contributing to delinquency — should be considered.[11] Leon was charged with violating subsection 3 of section 233.1, which makes it a simple misdemeanor "[t]o knowingly encourage,

---

[11] Iowa Code § 233.1 (West 1992). Section 233.1 provided:

> It shall be unlawful:
>
> 1. To encourage any child under eighteen years of age to commit any act of delinquency defined in chapter 232.
>
> 2. To knowingly send, cause to be sent, or induce to go, any child under the age of eighteen to any of the following:
>
> a. A brothel or other premises used for the purposes of prostitution, with the intent that the child engage the services of a prostitute.
>
> b. An unlicensed premises where alcoholic liquor, wine, or beer is unlawfully sold or kept for sale.
>
> c. Any premises the use of which constitutes a violation of sections 725.5, 725.10, or 725.11.
>
> 3. To knowingly encourage, contribute, or in any manner cause such child to violate any law of this state, or any ordinance of any city.
>
> 4. To knowingly permit, encourage, or cause such child to be guilty of any vicious or immoral conduct.
>
> 5. For a parent willfully to fail to support the parent's child under eighteen years of age whom the parent has a legal obligation to support.

contribute, or in any manner cause such child to violate any law of this state or ordinance of any city." Iowa Code § 233.2(3). The complaint and affidavit charging Leon with contributing to delinquency alleges "Defendant on or about the 17th day of December, 1993 . . . did contribute or knowingly encourage, contribute, or in any manner cause a minor to violate any law of this state or any ordinance of this city." Government's Ex. No. 2 at 2.[12] Neither Iowa Code section 233.1(3), nor the other code sections under which Leon was charged in 1993, appear to precisely correspond, element-for-element, to any of the offenses listed under § 4A1.2(c)(1). But cf. United States v. Reyes-Maya, 305 F.3d 362, 367 (5th Cir. 2002) (concluding that the elements of a prior and listed offense need not be identical for the offense to be similar). Still, this factor is not dispositive of non-similarity, and in any event does not, in this Court's estimation, preclude the overall conclusion that the factors enumerated by Amendment 709, "taken as a whole, indicate that the offense

[12] The arrest slip also alleged Leon harbored a minor and that he provided alcohol to a minor. For a more detailed explanation of the other charges stemming from Leon's 1993 arrest, see supra footnote 8 on page 13.

is, like the listed offenses, neither particularly serious nor likely to indicate recurring criminal conduct." Hardeman, 933 F.3d at 282. Indeed, as explained below, Amendment 709 confirms that the question of "similarity" under § 4A1.2(c) is a common-sense determination aimed at excluding offenses that, although not listed as excludable, are not serious enough to warrant increased punishment for a subsequent offense.

Finally, turning to the third and fourth factors — level of culpability involved and the degree to which the commission of the offense indicates a likelihood of recurring criminal conduct — the Court again notes the minor nature of Leon's prior offense, as reflected in the sentence of five hours jail and fine of $40 he received. This extremely light sentence suggests a low level of culpability and low predictive capacity for future criminality. More importantly, contributing to delinquency denotes a level of blameworthiness analogous to that of the offenses listed in § 4A1.2(c)(1). See Supplement to App. C, Amendment 709 at 239 (noting that Amendment 709 "responds to concerns that . . . some misdemeanors and petty offenses counted under the guidelines involve conduct that is not serious enough to warrant

increased punishment upon sentencing for a subsequent offense.”). This Court is persuaded that Leon’s 1993 offense is precisely the type of minor offense the Commission had in mind when it amended § 4A1.2(c) (id.), especially given the fact that inclusion of his offense in calculating his criminal history would, by itself, disqualify Leon from safety valve eligibility. Id. (noting that Amendment 709 also “responds to concerns that . . . the presence of a misdemeanor or petty offense in a rare case can affect the sentence in the instant offense in a way that is greatly disproportionate to the seriousness of the prior offense (such as when such a prior offense alone disqualifies a defendant from safety valve eligibility).”). For Leon, a finding by this Court that the 1993 conviction must be counted would mean 23 additional months of prison – nearly two years of additional prison time for a conviction originally punished by five hours imprisonment and a $40 fine.

In sum, this Court is persuaded that, in light of Amendment 709’s clarification, the proper test for determining the “similarity” of offenses for the purposes of § 4A1.2(c) is the “common sense approach,” rather than the strict elements

test. And after carefully considering the arguments of the parties and the factors enumerated by Amendment 709, this Court finds that Leon’s 1993 offense for contributing to the delinquency of a minor is similar to the offenses listed in U.S.S.G. § 4A1.2(c)(1) and must therefore be excluded in calculating his criminal history category. This general finding is also based upon the comparisons of specific offenses made on the record at sentencing. These comparisons, along with the other findings made orally at sentencing, are by reference incorporated herein.

## IV. CONCLUSION

Because the above analysis compels the same resulting sentence announced by this Court at Leon’s original sentencing, Leon’s original sentence of 37 months’ imprisonment and 4 years supervised release stands unchanged. A judgment and commitment will issue on this date.

**IT IS SO ORDERED** this 31st day of December, 2008.

Donald E. O’Brien, Senior Judge
United States District Court
Northern District of Iowa